UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| GEORGE TYRONE DUNLAP, JR.,<br><br>　　　　　Petitioner,<br><br>vs.<br><br>PALMER, WARDEN, et al.,<br><br>　　　　　Respondents. | Case No. 3:07-cv-00019-RJJ-WGC<br><br>ORDER |

This is an amended petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 in which petitioner, a Nevada state prisoner, is proceeding *pro se* (ECF #47). Now before the court is respondents' answer to the remaining ground in the petition (ECF #62). Petitioner filed a reply to the answer (ECF #63).

**I. Procedural History and Background**

On July 24, 2002, the State charged petitioner with three counts of first-degree kidnaping, three counts of sexual assault with a minor under fourteen years of age, three counts of lewdness with a child under age fourteen, two counts of coercion, and one count of battery with the intent to commit sexual assault. Exh. 5.[1]  At an initial arraignment held July 30, 2002, petitioner pleaded not guilty to all charges. Exh. 4. Petitioner was represented by the public defender's office until December 5, 2002,

---

[1] Exhibits 1-54 are exhibits to respondents' answer to the original petition (ECF #22) and may be found at ECF #23. Exhibits 55-129 are exhibits to respondents' motion to dismiss the petition (ECF #48) and may be found at ECF #s 48-51.

when, after holding a hearing and canvassing petitioner, the court allowed petitioner to proceed representing himself with the public defender's office as stand-by counsel. *Id*. Petitioner remained *pro se* until June 30, 2003, when the court re-appointed the public defender's office to represent petitioner. *Id*. On October 21, 2003, the court granted the public defender's motion to withdraw as counsel, and on February 13, 2004, the court appointed alternate counsel. *Id*.; Exh. 49. Alternate counsel continued to represent petitioner despite petitioner's numerous motions to dismiss him and appoint other counsel. Exhs.4, 29, 30, 77, 79, 83. On August 5, 2005, alternate counsel moved to withdraw as counsel of record, however, on August 22, 2005, at a hearing on the motion, alternate counsel stated that he had just received a plea offer from the State that he wished to discuss with petitioner. Exhs. 85, 31.

On August 23, 2005, the State filed an amended information charging petitioner with two counts of attempted sexual assault (counts one and two) and one count of attempted lewdness with a minor under the age of fourteen (count three). Exh. 86. On that same day, petitioner entered an *Alford* plea, as provided by *North Carolina v. Alford*, 400 U.S. 25 (1970), to several charges pursuant a plea agreement with the State. Exhs. 32, 33. Under the agreement, petitioner agreed to enter an *Afford* plea to all counts in the amended information.[2] *Id*. In exchange for petitioner's plea, the State agreed to retain the right to argue at sentencing but to cap the sentence for each count at ten years. *Id*.

Prior to sentencing, petitioner filed a *pro se* motion to withdraw his plea and to dismiss his counsel. Exhs. 87, 88. In response to the motions, the court appointed an independent attorney to review the plea agreement. Exh. 4. At a hearing held, October 26, 2005, independent counsel advised the court that he found no legal basis on which petitioner could withdraw his plea. *Id*. The court ultimately denied petitioner's *pro se* motions and proceeded with sentencing on January 11, 2006. *Id*. The court sentenced petitioner to four to ten years on count one; four to ten years on count two, concurrent to count one; and four to ten years on count three, consecutive to count two. *Id*.; Exh. 37. The judgment of conviction issued March 3, 2006. Exh. 37. Petitioner did not file a direct appeal.

---

[2] Although the plea agreement states that petitioner would plead guilty, it appears that after further discussion at the entry-of-plea hearing, the parties agreed that petitioner would enter an *Alford* plea instead of a guilty plea. (Exhs. 32, 33.)

On January 20, 2006, petitioner filed his first state postconviction petition. Exh. 34. On March 24, 2006, without holding an evidentiary hearing, the district court denied the petition. Ex. 42. Petitioner appealed. Ex. 39. On March 15, 2006, petitioner filed his second state postconviction petition. Exh. 94. On June 14, 2006, without holding an evidentiary hearing, the district court denied the petition. Exh. 45. Petitioner appealed. Exh. 46. On November 28, 2006, the Nevada Supreme Court affirmed the denial of petitioner's first and second postconviction petitions. Exh. 50.

On January 2, 2007, petitioner dispatched his petition for writ of habeas corpus to this court (ECF #3). In an order issued May 1, 2009, the court found part of ground two of the petition unexhausted (ECF #34). On September 22, 2009, the court stayed the case while petitioner returned to state court to exhaust the claim (ECF #38).

On July 1, 2009, petitioner filed his third state postconviction petition. Exh. 114. On October 26, 2009, without holding an evidentiary hearing, the district court denied the petition. Exh. 118. Petitioner appealed. Exh. 119. On July 15, 2010, the Nevada Supreme Court affirmed the denial of petitioner's third postconviction petition. Exh. 128.

This court reopened petitioner's federal habeas corpus action on October 19, 2010 (ECF #45). Petitioner filed an amended petition on October 28, 2010 (ECF #47). The only remaining claims are portions of ground 2 (*see* ECF #61). Respondents have answered and argue that the remaining ineffective assistance of counsel claims must be denied pursuant to the Antiterrorism and Effective Death Penalty Act (ECF #62).

**II. Legal Standards**

**A. Antiterrorism and Effective Death Penalty Act**

28 U.S.C. § 2254(d), a provision of the Antiterrorism and Effective Death Penalty Act (AEDPA), provides the legal standards for this court's consideration of the petition in this case:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim --
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable

>determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The AEDPA "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone,* 535 U.S. 685, 693-694 (2002). A state court decision is contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254, "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Supreme Court's] precedent." *Lockyer v. Andrade,* 538 U.S. 63, 73 (2003) (quoting *Williams v. Taylor,* 529 U.S. 362, 405-406 (2000) and citing *Bell v. Cone,* 535 U.S. 685, 694 (2002)). This court's ability to grant a writ is limited to cases where "there is no possibility fair-minded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents." *Harrington v. Richter*, 562 U.S. 86, 131 S.Ct. 770, 786 (2011).

A state court decision is contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254, "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Supreme Court's] precedent." *Lockyer v. Andrade*, 538 U.S. 63 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000), and citing *Bell v. Cone*, 535 U.S. 685, 694 (2002).

A state court decision is an unreasonable application of clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254(d), "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Andrade*, 538 U.S. at 74 (quoting *Williams*, 529 U.S. at 413). The "unreasonable application" clause requires the state court decision to be more than incorrect or erroneous; the state court's application of clearly established law must be objectively unreasonable. *Id*. (quoting *Williams*, 529 U.S. at 409).

In determining whether a state court decision is contrary to federal law, this court looks to the

-4-

state courts' last reasoned decision. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991); *Shackleford v. Hubbard*, 234 F.3d 1072, 1079 n.2 (9th Cir. 2000). Further, "a determination of a factual issue made by a state court shall be presumed to be correct," and the petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

### B. Ineffective Assistance of Counsel

Ineffective assistance of counsel claims are governed by the two-part test announced in *Strickland v. Washington,* 466 U.S. 668 (1984). In *Strickland*, the Supreme Court held that a petitioner claiming ineffective assistance of counsel has the burden of demonstrating that (1) the attorney made errors so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment, and (2) that the deficient performance prejudiced the defense. *Williams v. Taylor,* 529 U.S. 362, 390-91 (2000) (citing *Strickland,* 466 U.S. at 687). To establish ineffectiveness, the defendant must show that counsel's representation fell below an objective standard of reasonableness. *Id.* To establish prejudice, the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* A reasonable probability is "probability sufficient to undermine confidence in the outcome." *Id.* Additionally, any review of the attorney's performance must be "highly deferential" and must adopt counsel's perspective at the time of the challenged conduct, in order to avoid the distorting effects of hindsight. *Strickland,* 466 U.S. at 689. It is the petitioner's burden to overcome the presumption that counsel's actions might be considered sound trial strategy. *Id.*

Ineffective assistance of counsel under *Strickland* requires a showing of deficient performance of counsel resulting in prejudice, "with performance being measured against an objective standard of reasonableness,. . . under prevailing professional norms." *Rompilla v. Beard,* 545 U.S. 374, 380 (2005) (internal quotations and citations omitted). When the ineffective assistance of counsel claim is based on a challenge to a guilty plea, the *Strickland* prejudice prong requires a petitioner to demonstrate "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

If the state court has already rejected an ineffective assistance claim, a federal habeas court may only grant relief if that decision was contrary to, or an unreasonable application of, the *Strickland*

standard. *See Yarborough v. Gentry,* 540 U.S. 1, 5 (2003). There is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id.*

The United States Supreme Court has described federal review of a state supreme court's decision on a claim of ineffective assistance of counsel as "doubly deferential." *Cullen v. Pinholster*, 131 S.Ct. 1388, 1403 (2011) (quoting *Knowles v. Mirzayance*, 129 S.Ct. 1411, 1413 (2009)). The Supreme Court emphasized that: "We take a 'highly deferential' look at counsel's performance. . . . through the 'deferential lens of § 2254(d).'" *Id.* at 1403 (internal citations omitted). Moreover, federal habeas review of an ineffective assistance of counsel claim is limited to the record before the state court that adjudicated the claim on the merits. *Cullen*, 131 S.Ct. at 1398-1401. The United States Supreme Court has specifically reaffirmed the extensive deference owed to a state court's decision regarding claims of ineffective assistance of counsel:

> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both "highly deferential," *id*. at 689, 104 S.Ct. 2052; *Lindh v. Murphy*, 521 U.S. 320, 333, n.7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is "doubly" so, *Knowles*, 556 U.S. at ——, 129 S.Ct. at 1420. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. 556 U.S. at ——, 129 S.Ct. at 1420. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

*Harrington*, 131 S.Ct. at 788. "A court considering a claim of ineffective assistance of counsel must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." *Id*. at 787 (quoting *Strickland*, 466 U.S. at 689). "The question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." *Id*. (internal quotations and citations omitted).

**III. Instant Petition**

    **Ground 2**

Petitioner alleges that his counsel rendered ineffective assistance in violation of his Fifth, Sixth and Fourteenth Amendment rights (ECF #47, pp. 8-10). In the portions of ground 2 that remain before the court, petitioner claims that he signed the guilty plea agreement under duress due to the following:

(A) counsel would not prepare to proceed to trial; (B) counsel filed a motion to withdraw only seven days before trial; (C) counsel guaranteed petitioner that he would receive probation; (D) counsel did not allow him to view or read the guilty plea agreement; (E) counsel failed to defend and represent petitioner's actual innocence claim; and (F) counsel threatened to assist the State if petitioner did not accept the plea agreement.[3] *Id*.

Petitioner pleaded guilty upon the advice of counsel, thus he "may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was [ineffective] . . . . and that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 56-57, 59. **CHECK**; *Lambert v. Blodgett*, 393 F.3d 943 (9th Cir. 2004).

In addressing the issues contained in Ground 2 of the federal habeas petition, the Nevada Supreme Court on appeal of the denial of the first and second state habeas petitions determined:

> First, appellant claimed that his counsel was ineffective for coercing him into pleading guilty through deception, trickery, fraud, and threats to withdraw as counsel. Specifically, appellant claimed that counsel guaranteed he would receive concurrent sentences of two to ten years with a suspended sentence, and he would be placed on probation and released on his own recognizance prior to sentencing. Appellant failed to demonstrate that his counsel's performance was deficient or that there was a reasonable probability of a different outcome at sentencing. In exchange for appellant's guilty plea, the State agreed to a cap on each count of ten years rather than a maximum of twenty years. During appellant's plea canvass, appellant agreed that he understood that he could be sentenced to terms of two to ten years for each count, and that the district court had the discretion to sentence appellant to consecutive or concurrent terms. Appellant stated that he understood that the district court would determine his sentence after reviewing the facts surrounding the case and the Presentence Investigation report and recommendation. Additionally, appellant stated that he understood he would need to undergo a psychosexual assessment and evaluation to be considered for probation. It is apparent from the record that, although counsel argued that appellant should be granted probation, probation was not guaranteed. This court has stated that a mere subjective belief of a defendant as to potential sentence, or hope of leniency, unsupported by any promise from the State or indication by the court, is insufficient to invalidate a guilty plea as involuntary or unknowing. Counsel moved the court and argued for appellant's release on his own recognizance awaiting sentencing, but the district denied the motion. Thus, the district court did not err in denying this claim.
>
> Second, appellant claimed that his counsel was ineffective for not allowing him to view or read his plea agreement. Appellant failed to demonstrate that his counsel was ineffective. Although appellant stated during his plea canvass that he did not read his

---

[3] Respondents have parsed the remaining claims in ground 2 into grounds 2(A) through 2(F) as noted here, however, the court will discuss several subparts together.

>plea agreement, he stated that counsel read it to him, he understood it, and he signed it freely and voluntarily. Appellant failed to demonstrate that had he viewed the plea agreement, he would have refused to plead guilty and would have insisted on proceeding to trial. Thus, the district court did not err in denying this claim.
>Third, appellant claimed that counsel was ineffective by coercing appellant to enter an *Afford* plea when appellant asserted his innocence. Appellant failed to demonstrate that counsel's performance was ineffective. Appellant's *Afford* plea signified that he maintained his innocence, but that he believed that it was in his best interest to enter a plea. [fn9: We note that this court has previously recognized that a claim of innocence is essentially academic where a defendant enters a plea pursuant to *Afford* .… Appellant failed to demonstrate that he was actually innocent in the instant case .…] Appellant received a substantial benefit by entry of his guilty plea in the instant case. [fn10: Appellant was initially charged by information with first degree kidnapping (NRS 200.310, NRS 200.320); sexual assault with a minor under the age of fourteen (NRS 201.230); coercion (NRS 207.1990); and battery with intent to commit a crime (NRS 200.400).] Thus the district court did not err in denying this claim.

Exhibit 50 at 3-5 (internal quotation marks and footnotes omitted unless otherwise noted).

This court turns first to petitioner's allegations in grounds 2(A) and (B) that his counsel would not prepare for trial and further threatened to withdraw seven days before trial unless petitioner accepted the plea agreement (ECF #47, p. 8).

Petitioner's claim that his counsel would not prepare for trial lacks any specificity and is therefore conclusory. *Jones v. Gomez*, 66 F.3d 199, 205 (9th Cir. 1995)). Moreover, the record reflects that the state district court granted four continuances at defense counsel's request due to the need to complete investigation and once due to a conflict with defense counsel's calendar. Exh. 4 at 17-21 (02/24/04; 07/06/04; 09/30/04; 04/04/05). Petitioner did not object to the requested continuances in order to complete investigation; nothing in the record suggests that he did not support completing the investigation. Counsel repeatedly informed the court that he was attempting to represent petitioner and to prepare for trial, despite petitioner's several motions for new counsel. Exhs. 4 at 18, 20 (07/08/04; 07/20/04; 01/27/05), 29, 30, 78.

Petitioner did file three motions seeking new counsel. Exhs. 77, 79, 83. It appears from the record that, with the first two motions, petitioner and counsel resolved that counsel would remain. Exh. 4 at 19-20 (09/30/04; 01/27/05). The district court denied the third motion three months before trial. Exh. 30.

On August 5, 2005, counsel filed a motion to withdraw as counsel of record. Exh. 85. Trial was scheduled for August 29, 2005. Exh. 4 at 21 (04/04/05). In the motion, counsel stated that petitioner

-8-

had repeatedly complained about counsel to the court and the State Bar, had engaged in inappropriate

1  comments toward and communications with counsel, and showed such animosity that counsel had
2  finally concluded that he could no longer adequately represent petitioner. Exh. 85.
3        On August 11, 2005, counsel sent petitioner a letter informing him that the hearing on the
4  motion to withdraw as counsel was set for August 22, 2011. Exh. 87 at 31. Counsel further expressed
5  in that letter his view that petitioner was sabotaging his defense with his statements and letters to his
6  family. *Id*. Counsel also told petitioner that he would have vigorously defended him and had had every
7  hope of prevailing at trial. *Id*. At the August 22, 2005 hearing on the motion to withdraw, petitioner's
8  counsel advised the court that the State had just made a plea offer that he wished to convey to
9  petitioner; after a recess counsel informed the court "after negotiation it appears the matter is resolved"
10 and the guilty plea agreement would be filed with the court the next day. Exh. 31. During that August
11 22 hearing, petitioner did not object to any of his counsel's representations; in fact, he did not address
12 the court at all.
13       The court agrees that the claim that counsel refused to prepare for trial lacks specificity and
14 further concludes that this claim and the claim that counsel threatened to withdraw seven days prior to
15 trial in order to coerce petitioner to agree to the plea deal are belied by the record.
16       Next, the court considers ground 2(E), petitioner's claim that his counsel failed to defend or
17 rightfully represent petitioner's allegations of actual innocence (ECF #47, p. 10).
18       Petitioner provides no specific factual allegations to support this vague assertion. The record
19 reflects that when petitioner sought release on his own recognizance pending trial, the State opposed
20 the motion and attached letters that petitioner had written to his family that included serious threats to
21 his wife and the victims and provided scripts for his children to learn for trial. Exh. 81. The record
22 further indicates that petitioner's counsel told the court that he could deal with the letters at trial, urged
23 petitioner to stop writing letters, told petitioner he had a defensible case and that they could prevail at
24 trial, and only moved to withdraw after petitioner repeatedly complained about counsel to the State Bar.
25 Exhs. 4, 29, 30, 78.
26       Moreover, petitioner ultimately entered an *Afford* plea, which allowed him to plead guilty while
27 maintaining his claim of innocence. Exh. 33. The court cannot find any instance in the record where
28

counsel represents that petitioner is not actually innocent. The court finds this claim is also belied by the record.

Finally, the court considers grounds 2(C), (D), and (F), petitioner's claims that he signed the guilty plea agreement under duress because counsel rushed him into signing the plea agreement, which he was not even allowed to read; and counsel threatened to assist the State if petitioner did not accept the plea deal (ECF #47, pp. 9-10). Petitioner also claims that he signed the plea agreement in reliance on counsel's statement that he would receive probation. *Id*.

With respect to threats by counsel, petitioner has not provided any specific factual allegations whatsoever to support this claim. In a September 28, 2004 hearing, the state district court considered petitioner's first motion to dismiss his counsel. Exh. 29. Petitioner stated that his counsel had not communicated with him and failed to return his calls. *Id*. at 20. This exchange followed:

| | | |
|---|---|---|
| Counsel: | | If he would like me to reply in open court, I could do that, but I think it would be detrimental to [petitioner] especially in regards to other legal law enforcement agencies, if you don't want to go there. |
| Petitioner: | | See, he's threatening me. |
| Court: | | Wait, wait, wait. |
| Counsel: | | I'm helping him. |

Id. at 21. The finds no other reference to a threat of any kind in the record, other than petitioner's conclusory, vague habeas ground that counsel threatened to assist the State.

With respect to petitioner's reading and understanding the terms of the plea agreement, a defendant has the right to make a reasonable, informed decision about whether to accept a plea offer. *Turner v. Calderon*, 281 F.3d 851, 880 (9th Cir. 2002). Here, petitioner signed the guilty plea agreement on August 23, 2004. Exh. 32. The plea agreement provided: the punishment on each of the three counts carried the possibility of two to twenty years in prison, but the State agreed to cap its recommendation for each count at ten years; petitioner would be eligible for probation only if a psychosexual evaluation certified that he did not represent a high risk to reoffend; whether he received probation was at the discretion of the sentencing judge; whether the sentences were run concurrently or consecutively was at the discretion of the sentencing judge; petitioner had not been promised or guaranteed any particular sentence by anyone; even if petitioner's counsel or the State recommended

a particular sentence, the court was not obligated to follow the recommendation. *Id*. at 1-5. Finally, the plea agreement provided: "I am signing this agreement voluntarily, after consultation with my attorney, and I am not acting under duress or coercion or by virtue of any promises of leniency, except for those set forth in this agreement." *Id*. at 5.

At the arraignment, petitioner stated to the court that he had not read the guilty plea agreement, but that his counsel read it to him and that he understood it before he signed it. Exh. 33 at 4-5. He indicated that he felt that signing the agreement was in his best interest and that he signed it freely and voluntarily. *Id*. at 5. The court canvassed petitioner and his responses indicated that he understood that it was a conditional plea and that if the court sentenced him to more than ten years on any one count that petitioner would be entitled to withdraw his guilty plea and that whether to sentence petitioner to probation was the judge's decision. *Id*.

If he had proceeded to trial, petitioner faced a potential sentence of two to twenty years on each of two counts of sexual assault and two to twenty years on one count of attempted lewdness with a minor under the age of 14. Exh. 86. The court ultimately sentenced petitioner, pursuant to his *Afford* plea, to forty-eight to one-hundred-twenty months on each of three counts, with counts 1 and 2 to run concurrently and count 3 to run consecutively to count 2, with 1, 315 days credit for time served. Exh. 37.

Nothing in the record supports petitioner's vague claim that his counsel threatened to help the State. Moreover, the plea canvass makes it clear that petitioner understood the guilty plea agreement before he signed it and understood that probation was at the court's discretion. The plea agreement further resulted in petitioner receiving a sentence that was substantially less than what he would have faced at trial. Petitioner's remaining factual claims in ground 2 are all belied by the record.

Thus, petitioner has failed to demonstrate that his counsel was not prepared to proceed to trial, threatened to withdraw as counsel seven days before trial, failed to represent petitioner's claim of actual innocence, or that he signed the guilty plea under duress because counsel threatened to assist the State, did not allow petitioner to read the plea agreement and in reliance on counsel's statement that he would be sentenced to probation. Petitioner has, therefore, failed to demonstrate that any of counsel's actions

fell outside the wide range of reasonable professional assistance required by *Strickland* or that counsel's actions were unreasonably deficient and that such deficient performance prejudiced petitioner.

Accordingly, petitioner has failed to demonstrate that the state district court's decision is contrary to, or involves an unreasonable application of, clearly established federal law, as determined by the U.S. Supreme Court, or was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d). The court determines that ground 2 is meritless and is denied. The petition is thus denied in its entirety.

### III. Certificate of Appealability

In order to proceed with an appeal, petitioner must receive a certificate of appealability. 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22; 9th Cir. R. 22-1; *Allen v. Ornoski,* 435 F.3d 946, 950-51 (9th Cir. 2006); s*ee also United States v. Mikels*, 236 F.3d 550, 551-52 (9th Cir. 2001). Generally, a petitioner must make "a substantial showing of the denial of a constitutional right" to warrant a certificate of appealability. *Id.;* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). "The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* (*quoting Slack*, 529 U.S. at 484). In order to meet this threshold inquiry, the petitioner has the burden of demonstrating that the issues are debatable among jurists of reason; that a court could resolve the issues differently; or that the questions are adequate to deserve encouragement to proceed further. *Id.* This court has considered the issues raised by petitioner, with respect to whether they satisfy the standard for issuance of a certificate of appealability, and determines that none meet that standard. The court will therefore deny petitioner a certificate of appealability.

### IV. Conclusion

**IT IS THEREFORE ORDERED** that the petition for a writ of habeas corpus (ECF #47) is **DENIED IN ITS ENTIRETY**.

**IT IS FURTHER ORDERED** that the clerk **SHALL ENTER JUDGMENT** accordingly and close this case.

1  **IT IS FURTHER ORDERED** that petitioner is **DENIED A CERTIFICATE OF APPEALABILITY.**

Dated this 24th day of March, 2015.

_____
UNITED STATES DISTRICT JUDGE